**Otto Ziebell et al., Appellees, v. Village of Posen, Appellant.**

**Gen. No. 33,895.**

Opinion filed March 17, 1930.

W. Otto Wielgorecki, for appellant; Walter F. Brody, of counsel.

Deneen, Healy & Lee, Oscar M. Torrison and William G. Worthey, for appellees; Roy Massena, Oscar

M. Torrison, William G. Worthey and Marshall A. Pipin, of counsel.

Mr. Presiding Justice McSurely delivered the opinion of the court.

October 3, 1927, the complainants, 44 in number, a majority of the voters in the territory which the Village of Posen, defendant, attempted to annex, filed their bill asking for an injunction to restrain this attempt. A temporary injunction was issued. Subsequently an amended bill was filed, to which defendant demurred. This was overruled and a decree entered making the injunction permanent. Defendant appeals.

Defendant raises only one point in its brief, namely, that the validity of the annexation proceedings can be tested only by *quo warranto* and that a court of equity has no jurisdiction over the subject. Complainants reply that *quo warranto* is founded on possession and user of the disputed office or territory and that their bill was filed before this stage was reached and pending an uncompleted attempt to annex.

Bearing on this major issue is the question as to whether the proceedings were attempted under the annexation statute in force prior to an amendment thereto, effective July 7, 1927, or after such amendment. The statute prior to this amendment is found in ch. 24, Cities and Villages Act, ¶ 409, Cahill, 1925, p. 375. This is the act of 1872. The statute as amended July 7, 1927, is in ch. 24, Cities and Villages Act, ¶ 409, Cahill, 1929, p. 401. They are quite lengthy and it is unnecessary to recite all their provisions in this opinion. Complainants contend that the annexation proceedings are void whether under the 1872 act or the amended act of 1927. The facts admitted by the demurrer show that one or both of these statutes was violated in the following respects:

The petition for annexation circulated by the defendant was signed by 13 names, of which 8 were prop-

erty owners and 5 legal voters. These 13 signers were not a majority either of property owners or legal voters of the territory, as there were 62 property owners and legal voters therein. The statute of 1872 and of 1927 requires a majority of property owners or legal voters as signers. In *People v. City of St. Elmo*, 306 Ill. 168, the court in construing this statute held that if the petition did not contain the signatures of a majority of the owners of real estate in the territory proposed to be annexed, it did not meet the requirements of the law and the proceedings under it were void.

The demurrer admitted that the petition was signed by three persons purporting to be property owners and legal voters, but who in fact were neither and were only temporarily residing in the territory sought to be annexed.

Notices of the election called under the ordinances passed by the board of trustees were posted only 6 days prior to the election. The statute (ch. 46, ¶ 47, Cahill's Illinois Statutes) requires at least 20 days prior posting.

The bill alleges and the demurrer admits that the lands lying in the territory sought to be annexed are used exclusively for farming and agricultural purposes and are more than one-third of the area of the Village of Posen. The annexation of such lands is forbidden by both the old and the amended statutes, except with the written consent of the owners, which was not obtained. The statute, Cahill's St. ch. 24, ¶ 410, says: "No tract of land used exclusively for agricultural purposes shall be embraced in such proposed annexed territory without the written consent of the owner or owners thereof attached to and filed with said petition."

Under the statute of 1872 annexation elections must be held within 60 days after the petition is filed. The bill alleges an election was held September 6, 1927.

The petition, then, must have been filed July 8, or after the amendment of July 7, 1927, was in force; otherwise the election on September 6th was held more than 60 days after the petition was filed.

The bill alleges that when complainants learned of the proposed annexation, they made a request upon the village officers and agents to see the petition, ordinances and records, but the officers did not produce them, claiming they did not know where they were; that the defendant was about to file a copy of the ordinances and map of the territories annexed with the county clerk of Cook county and the recorder, as the statute of 1872 requires, and thereupon to levy and collect taxes from the owners and voters in such territories and to exercise authority over the inhabitants and property therein. The bill was filed before the ordinances and map were filed and a temporary injunction was allowed, restraining the defendant, its officers and agents from filing said ordinances and map and restraining the defendant from taking any proceedings purporting to annex said territories.

The bill alleged that the day after the injunction writ had been served on the defendant and while it was in full force and effect, the president of the defendant filed or caused to be filed with the recorder of Cook county a copy of said ordinances, together with a map of said territories and filed the same also with the county clerk of Cook county, contrary to the writ of injunction, and that during its pendency and while the injunction was in full force taxes were attempted to be levied and collected from the inhabitants of said territories by the Village of Posen.

Under the circumstances shown by the record before us, is *quo warranto* the exclusive remedy, or may complainants properly seek relief in a court of equity? Under the law of 1872 it is provided that, where a majority of votes are cast for annexation, the board of trustees "shall within ninety days thereof, by or-

dinance, annex such territory to such city, village or town, *upon filing* a copy of such ordinance with an accurate map of the territory annexed . . . in the office of the recorder of deeds." This would indicate that the proceedings to annex are not completed until the ordinance and map are filed as required and that this was a necessary step. If we view the proceedings as under the 1872 statute, they were not completed when complainants' bill was filed and the temporary injunction issued.

In this respect the instant proceedings differ from those under consideration in *Baird v. Community High School Dist.*, 304 Ill. 526; *Ogle v. City of Belleville*, 238 Ill. 389; *Manchester Community High School Dist. v. Murrayville Community High School Dist.*, 309 Ill. 403, cited by defendant. In the first of these the court rests its decision upon the fact that the bill specifically alleged a *de facto* district and that the board was in actual possession and exercising its powers and franchises. In the second case the bill alleged that annexation had been completed and that the mayor and city council had assumed corporate jurisdiction over the annexed territory. In the last case it appears that the school district under consideration was already in existence and functioning. In *Board of Education v. Thorp*, 336 Ill. 227, the opinion recites that the board "has assumed and exercised dominion and control over the disputed territory." Some of the other cases cited by defendant involved proceedings to collect taxes, where it was held that the validity of completed annexation proceedings could not be tested indirectly. In all of the cases cited by defendant the proceedings were to test by *quo warranto* the validity of completed annexation, where the authorities had been exercising their functions for some time.

As against defendant's position, it has been held as a general proposition that an injunction will lie to prevent unlawful acts of a municipal corporation.

*Griswold v. Brega,* 160 Ill. 490; *People ex rel. Nelson v. Taylor,* 281 Ill. 355, and cases there cited. To the same effect are decisions in other jurisdictions. *Layton v. Mayor and City Council of Monroe,* 50 La. Ann. 121; *City of Pueblo v. Stanton,* 45 Colo. 523; *Morris v. City of Nashville,* 74 Tenn. 337.

*Quo warranto* would not lie in the instant case because there had been no usurpation or assumption of franchise by the defendant. In *People v. O'Connor,* 239 Ill. 272, involving the validity of annexation proceedings, the court said:

"The sole purpose of the information (in *quo warranto*) is to require the defendant to show by what warrant he is holding and exercising the license, privilege or franchise in question."

In *People ex rel. Koerner v. Ridgley,* 21 Ill. 65, it was held that the information for *quo warranto* was insufficient because there was no distinct averment that the defendants held or exercised any office or franchise. Other cases to the same effect are *People ex rel. Evans v. Callaghan,* 83 Ill. 128; *People ex rel. Brothers v. Dodds,* 310 Ill. 607; *People ex rel. Wilcox v. Barber,* 265 Ill. 316; *People ex rel. Mark v. Hartquist,* 311 Ill. 127. In High on Extraordinary Remedies, 3rd Ed., sec. 627, the author says that to lay the foundation for proceeding by *quo warranto:*

"There must in all cases have been an actual possession and user of the franchise. It is not sufficient, therefore, that the person against whom the remedy is invoked should have merely claimed the right to take the official oath, but an absolute user must also be shown."

In the case at bar the territory had not yet been annexed and the defendant had not yet assumed to exercise control over it when the bill was filed; consequently, it was not possible by *quo warranto* to inquire by what right the village exercised authority

over the territory. Under such circumstances complainant properly sought the assistance of a court of equity. *People v. McWeeney*, 259 Ill. 161; *Morgan Park v. City of Chicago*, 255 Ill. 190.

We have, for the most part, considered these proceedings as having been commenced under the act of 1872 and prior to the amendment of 1927. We are of the opinion, however, in view of the date of election—September 6, 1927,—that the conclusion is inescapable that no annexation proceedings were commenced prior to July 7, and therefore any annexation proceedings were controlled by the statute in force July 7, 1927.

The statute as amended requires that a petition in writing, signed by a majority of property owners and also signed by a majority of the legal voters residing in the territory proposed to be annexed be filed with the county court, praying for the annexation of the territory to the village, and that the village submit the question of annexation to the board of trustees. The cause is then docketed by the court and time for hearing on the petition is fixed. After proper notice of the hearing, any interested person may appear and file objections thereto, and the court, after hearing, may allow or dismiss the petition. After it is allowed an order is entered finding that the petition conforms to the requirements of the act and directing that the question of annexation of the territory be submitted to the board of trustees, which question must be passed by a two-thirds majority of said board and entered on the records of said village. The ordinance does not become effective for 30 days thereafter, and not then if a referendum is ordered by the board. Not one of these steps required by the statute was taken. It would seem that the purported annexation proceedings were not only incomplete but were in fact and in law not even commenced.

It would be unreasonable to ask property owners to sit by and permit such futile and void proceedings to continue without objection on their part until after the defendant had taken possession of the disputed territory and then to file an action in *quo warranto*. The circumstances called for the intervention of a court of equity which could afford an adequate and direct remedy. Equity, in restraining the completion of the attempted annexation, the assumption by the defendant of jurisdiction over the disputed territory and levying of taxes, affords a more direct remedy by disposing of the matter in one proceeding. *Morgan Park v. City of Chicago,* 255 Ill. 190.

Another reason supporting equity jurisdiction is that otherwise complainants would have been put to many different actions to protect their interests and to prevent the levying and collection of taxes or the sale of their property for nonpayment of taxes. It is a well established principle that a court of equity has jurisdiction to interpose by injunction where it is necessary to prevent a multiplicity of suits. *Smith v. Bangs,* 15 Ill. 399, 400.

The demurrer admits that defendant knew that the petition was signed by an insufficient number of owners and legal voters in the territory, that no notice was given complainants of the annexation election, that notice of the election was not posted for the proper time, and that defendant concealed from complainants information of the proposed annexation and the petition. These facts would call for the interposition of a court of equity. *Griswold v. Brega,* 160 Ill. 490.

As a general proposition, when a proceeding is void it is a nullity and may be attacked in any manner; and it is unimportant how technically and precisely certain in point of form the record may appear. *People v. Seelye,* 146 Ill. 189; *Payson v. People,* 175 Ill. 267; *People v. Chicago, B. & Q. R. Co.,* 231 Ill. 463; *People v. Hausen,* 276 Ill. 204.

For the above reasons we hold that the bill was properly filed in a court of equity, which had jurisdiction of the matter, and that the record justified the issuance of the permanent injunction, and the decree is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.